■ In the Matter of the Claim of BESSIE WEINSTEIN, Respondent, v. APEX DRESS COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeal from an award of death benefits, grounded upon the board's findings that "the prolonged argument and emotional strain", in which decedent was involved immediately prior to his collapse while at work, constituted "greater stress and exertion than the ordinary wear and tear of life" and that "the extreme prolonged emotional stress and excitement precipitated the cerebrovascular damage and the left hemiplegia" which caused decedent's disability and subsequent death. The decedent, an employee

of 42 years' standing in the business of the employer, a dress manufacturer, at the time that he was stricken was in charge of the shipping department. Two other employees, Anibal Rodriguez and Joyce Beyers, worked under his supervision on that day, which was a Friday and, in this business, the busiest day of the week. Decedent's wife and the employer's president each testified that at the beginning of that day decedent appeared to be in good health. At about 11:30 A.M. an argument between decedent and Rodriguez ensued when Rodriguez threw a gumtape machine upon the table and an angry dispute continued until Rodriguez quit or was discharged — which, does not clearly appear. Rodriguez said that he kept quiet and got out of the place because of decedent's anger, which was greater than ever before; and he testified further that decedent was "real upset" and "really mad with me". Miss Beyers said that the men's voices were raised, that decedent became angry and excited and that when Rodriguez walked out decedent became very nervous and upset and his hands and body began to shake and continued to tremble. The sales manager testified that decedent, normally a quiet person, was excited and flushed. It seems clear beyond serious dispute that this incident, however disturbing, was but the beginning of the emotional upset which terminated about three hours later, when decedent was stricken, after the president, who said that both he and decedent were agitated and excited, had verbally chastised him for discharging Rodriguez, and other employees had "nagged" at him about his action, this displeasure occurring because the Friday's shipping work could not be completed after Rodriguez' departure. Upon Miss Beyers' return from lunch, she found that decedent was still shaking and getting "more and more upset" as other employees nagged about the help shortage, until there occurred the seizure that rendered him speechless and semi-comatose and led to his hospitalization and subsequent death. In response to a concededly proper hypothetical question, claimant's medical expert testified that it would have to be assumed without question that decedent had for some time suffered from hypertension and that the onset of his acute cerebrovascular accident, with left hemiplegia and aphasia, followed a period of rather severe psychological stress, which must be assumed to have been the major precipitating factor in producing the cerebrovascular accident; the doctor's conclusion being based on "two factors, the known effect of psychological stress on blood pressure, plus the time element". The decedent's attending physician also found causal relation and the carrier's medical witnesses denied it. We perceive no basis for disturbing the board's well-supported finding of an industrial accident causative of disability and death, recognizing, as the courts have done, "that undue anxiety, strain and mental stress from work are frequently more devastating than a mere physical injury, and the courts have taken cognizance of this fact in sustaining awards where no physical impact was present". (*Matter of Klimas* v. *Trans Caribbean Airways*, 10 N Y 2d 209, 213, and cases there cited; and see *Matter of Ferreri* v. *General Auto Driving School*, 26 A D 2d 601, mot. for lv. to app. den. 18 N Y 2d 578; *Matter of Davis* v. *Drug & Hosp. Employees' Union — Local 1199*, 24 A D 2d 1059, mot. for lv. to app. den. 17 N Y 2d 421; *Matter of Hamilton* v. *Transport Workers Union of Greater N. Y., Local 100*, 21 A D 2d 434, affd. 16 N Y 2d 696; *Matter of Goodwin* v. *New York State Workmen's Compensation Bd.*, 20 A D 2d 951, affd. 15 N Y 2d 508.) The thrust of appellants' argument that no accident occurred goes largely to the correctness of the rule that the board applied in finding "that the prolonged argument and emotional strain * * * involved greater stress and exertion than the ordinary wear and tear of life"; appellants contending that the true test was whether there was involved "emotional

strain or tension greater than the countless differences and irritations to which all workers are occasionally subjected without untoward result" (*Matter of Santacroce* v. *40 W. 20th St.*, 9 A D 2d 985, affd. 10 N Y 2d 855); but the test applied by the board, which is also, of course, the classic test in heart cases (*Matter of Burris* v. *Lewis*, 2 N Y 2d 323), seems to us to involve no critical distinction from the language employed in *Santacroce*, and, indeed, its application was approved in *Ferreri* (26 A D 2d 601, mot. for lv. to app. den. 18 N Y 2d 578, *supra*) in which we held that the board's findings, that the emotional experiences there detailed subjected "'decedent to severe and undue anxiety and emotional stress and strain greater than that involved in the ordinary wear and tear of life, and was thus the precipitating factor in the heart attack and death' * * * [were] supported by substantial evidence and could properly form the basis for the board's conclusion that decedent's death resulted from an industrial accident" (pp. 601–602). Decision affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Herlihy, Aulisi and Gabrielli, JJ., concur in memorandum by Gibson, P. J. Reynolds, J., dissents and votes to reverse and dismiss the claim in the following memorandum. REYNOLDS, J. (dissenting). The decision herein is in direct conflict with the line of so-called argument cases alleging emotional stress (*Matter of Santacroce* v. *40 W. 20th St.*, 9 A D 2d 985, affd. 10 N Y 2d 855) and cases which have consistently followed it (e.g., *Matter of Coleman* v. *Guide-Kalkhoff-Burr*, 12 A D 2d 554, affd. 10 N Y 2d 857; *Matter of Cramer* v. *Barney's Clothing Store*, 15 A D 2d 329, affd. 13 N Y 2d 711; *Matter of Zygler* v. *Tenzer Coat Co.*, 19 A D 2d 660, affd. 15 N Y 2d 562; *Matter of Samolin* v. *Transworld Airlines*, 20 A D 2d 160; *Matter of Wilson* v. *Tippetts-Abbott-McCarthy-Stratton*, 22 A D 2d 720; *Matter of Nicotera* v. *Dorn's Transp.*, 30 A D 2d 735). These decisions became necessary because of the attempted use of the rationale of *Matter of Klimas* v. *Trans Caribbean Airways* (10 N Y 2d 209) to adjudge most any emotional strain on the job the basis for the finding of an accidental injury justifying an award for workmen's compensation. It was easy for some members of the Workmen's Compensation Board to describe the most innocuous, routine argument arising on the job, as "severe", "prolonged", "protracted", "highly emotional" etc., and then proceed to find an award. As a result, it became necessary for this court and the Court of Appeals in *Matter of Santacroce* v. *40 W. 20th St.* (*supra*) and the cases following to strike down this unwarranted extension of *Matter of Klimas* v. *Trans Caribbean Airways* (*supra*). The decision of the board in *Klimas*, although it involved days, even weeks, of alleged emotional strain was unanimously reversed in this court and was the subject of real division in the Court of Appeals, provoking a strong dissent by Chief Judge Desmond and a 4-3 decision. It is interesting to note that immediately following *Klimas* this court and the Court of Appeals by the decision in *Matter of Santacroce* v. *40 W. 20th St.* (*supra*), and the cases following gave notice that alleged emotional stress and tension must *really* be substantial, protracted and prolonged to provide a basis for an award, not merely described as such. In this case we have a decedent who had a history of hypertension with the records indicating a progression of symptoms for over five years. Within one week before his cerebral vascular accident on July 24, 1964, this 68-year-old man had suffered from dizziness on coming home from his work. The widow reported to the attending doctor that claimant had a history of high blood pressure for at least six months to a year before the occurrence. The records show that there was no physical effort involved in his work and none is claimed. A careful study of this record compels the conclusion that the

discussion or argument was not severe, prolonged or protracted as found by the majority of the board and that there was no extreme, prolonged emotional stress or excitement. That what really happened was merely a common, routine argument of very short duration. The attempts to exaggerate; answers to leading questions, changed testimony from former statements etc., in this record carefully examined lead to no other conclusion. Briefly stated, the facts are that decedent had a difference of opinion and a discussion with an employee, one Rodriguez, who worked under him over the placing and position of a gumtape machine which decedent felt should be placed in another location. This employee replaced it, dropping it on the table, and, after being reprimanded by decedent walked out. Later decedent's cousin who was the president of the company remonstrated with decedent about firing the employee. The dissenting member of the board correctly described this record and the applicable law when he wrote: "I dissent and find on the evidence that the episode described on July 24, 1964 neither involved nor induced emotional strain or tension greater than the differences and irritations to which all workers are subjected without untoward result, and that therefore decedent did not suffer an accidental injury within the meaning of the Workmen's Compensation Law. I vote to reverse the decision and award by the Referee and to disallow the claim. *Coleman* v. *Guide-Kalkoff-Burr, Inc.*, N. Y. 2d October 20, 1961; *Santacroce* v. *40 W. 20th Street, Inc.*, N. Y. 2d October 20, 1961; *Cramer* v. *Barney's Clothing Store*, A. D. 2d January 30, 1962." [The correct citation of the cases in the quote are contained in the body of this dissent.] In sum, the decision in this case, in another attempt to extend *Klimas* to routine arguments, does not even come close to the facts in *Klimas*, and should be reversed and the claim dismissed.